# EXHIBIT 1

# Superior Court Complaint

| | |
|---|---|
| STATE OF MAINE<br>PENOBSCOT, ss. | SUPERIOR COURT<br>LOCATION: BANGOR<br>DOCKET NO. |

| | |
|---|---|
| **TROY WILLIAMS D/B/A TROY WILLIAMS HEATING,** | ]<br>] |
| Plaintiff, | ]<br>] |
| v. | ] COMPLAINT |
| **AIRE SERV, LLC**<br>**and DWYER GROUP, INC.,** | ]<br>]<br>] |
| Defendants. | ] |

Plaintiff, Troy Williams d/b/a Troy Williams Heating, through his attorneys, RUDMAN WINCHELL, states as follows:

## PARTIES

1. Plaintiff Troy Williams d/b/a Troy Williams Heating ("Mr. Williams") is an individual who resides in Bangor, County of Penobscot and State of Maine.

2. Defendant Aire Serv, LLC ("Aire Serv") is a limited liability company with a principal place of business in Waco, County of McLennan and State of Texas.

3. Defendant Dwyer Group, Inc. ("Dwyer Group," and together with Aire Serv, "Defendants") is a corporation with a principal place of business in Waco, County of McLennan and State of Texas.

## JURISDICTION

4. Jurisdiction is appropriate in this Court pursuant to 5 M.R.S. § 213.

## FACTS

5. Mr. Williams has operated Troy Williams Heating ("Williams Heating") for nearly 14 years.

6. Williams Heating is located in Bangor, Maine.

7. Aire Serv is a franchise organization providing replacement, maintenance, and repair of heating, ventilation, air conditioning, and indoor air quality systems.

8. Dwyer Group is the holding company of Aire Serv.

9. In 2015, Mr. Williams entered into negotiations with Defendants to operate Williams Heating as an Aire Serv franchise.

10. Mr. Williams provided Defendants with all of the information about his business and its location in Bangor, Maine.

11. Through the course of negotiations, Defendants' representatives made certain representations to Mr. Williams to entice him to enter into a Franchise Agreement.

12. Specifically, Defendants' representatives told Mr. Williams that his exclusive territory would be roughly a 30-mile radius around Bangor, including the City of Bangor itself.

13. Additionally, Defendants' representatives told Mr. Williams that he would have the ability to serve customers outside that vicinity as long as he was not infringing on another franchisee's exclusive territory.

14. At that time, the only other Aire Serv franchise in Maine was located in Hollis Center, Maine.

15. Hollis Center, Maine, is approximately 150 miles southwest of Bangor.

16. Defendants' representations as to territory were important to Mr. Williams because he has spent more than a decade building his client base and goodwill amongst his clients in the Greater Bangor area.

17. On September 25, 2015, Mr. Williams flew to Texas for an orientation session at Aire Serv's corporate headquarters.

18. Mr. Williams returned from the orientation session in Texas on September 27, 2015.

19. On September 28, 2015, Mr. Williams had a telephone conversation with Defendants' representative to clarify and confirm that his business was located in Bangor, Maine, rather than Brewer, Maine.

20. Mr. Williams sent the representative a follow up email explaining that his father had a Brewer mailing address, which may have contributed to any confusion over where Mr. Williams' business was located.

21. On September 29, 2015, Defendants purportedly sent the Franchise Agreement and related documents to Mr. Williams at troywilliams@yahoo.com.

22. Mr. Williams is not the owner of the email address troywilliams@yahoo.com, he did not provide that email address to Defendants, and he has no way to access the emails sent to that account (to the extent such account actually exists).

23. On September 30, 2015, Mr. Williams received a text message from Defendants' representative which stated as follows: "Troy. Please send me a tex message or email me saying ' I got the email from air serve YESTERDAY. Thanks Robert [sic]" (emphasis in original).

24. Mr. Williams responded the he had not received an email from anyone at Aire Serv.

25. On September 30, 2015, Defendants sent the Franchise Agreement and related documents to Mr. Williams at his actual email address, troywilliamsheating@gmail.com.

26. In that email, another one of Defendants' representatives similarly requested that Mr. Williams "respond back that you got it yesterday," even though Mr. Williams had not received the Franchise Agreement until September 30, 2015.

{R1750926.1 57925-07196l }   3

27. Upon information and belief, Mr. Williams received a hard copy of the Franchise Agreement via Federal Express on or after September 30, 2015.

28. Upon information and belief, Mr. Williams received, along with the Franchise Agreement, Aire Serv's Franchise Disclosure Document dated April 1, 2015, as amended August 3, 2015 (the "FDD").

29. The FDD is approximately 400 pages long.

30. The FDD was provided in accordance with the Federal Trade Commission's Franchise Rule (the "Rule").

31. The Rule gives prospective purchasers of franchises the material information they need in order to weigh the risks and benefits of such an investment.

32. The Rule requires franchisors to provide all potential franchisees with a disclosure document containing 23 specific items of information about the offered franchise, its officers, and other franchisees.

33. The Rule provides for 7- and 14-day holding periods after the dissemination of certain information contained the FDD.

34. The Rule requires that the franchisor obtain a signed receipt from the franchisee after providing the FDD.

35. Defendants have produced a receipt purportedly signed by Mr. Williams and dated September 25, 2015.

36. The date on this receipt is incorrect at best, as Mr. Williams was traveling on September 25 and did not receive the FDD on that date.

37. Mr. Williams has no recollection of signing the receipt and questions its authenticity, especially since he still has both original receipts provided with the FDD and neither is signed.

38. The Franchise Agreement, which had been prepared by Defendants, was sent to Mr. Williams to review without the assistance of counsel.

39. On October 12, 2015, the date set for Mr. Williams to sign the Franchise Agreement, Mr. Williams admitted to that he had not yet reviewed the Franchise Agreement.

40. When Defendants' representative walked Mr. Williams through the Franchise Agreement, Mr. Williams pointed out a number of things that were wrong with the Franchise Agreement.

41. Defendants' representative assured Mr. Williams that he did not need to worry about the inaccuracies in the Franchise Agreement.

42. Mr. Williams again questioned the exclusive area he was being granted.

43. Defendants' representative assured Mr. Williams that it was just as he had been told and that he was getting roughly a 30-mile radius around Bangor.

44. Defendants' representative told Mr. Williams that if he did not sign the Franchise Agreement as prepared by Defendants, they would refuse to grant him the Aire Serv franchise.

45. Based on these assurances, continued representations, and inability to negotiate terms, Mr. Williams signed the Franchise Agreement on October 12, 2015.

46. After Mr. Williams signed the Franchise Agreement, he learned that his territory was located mostly south of Bangor.

47. In fact, his territory did not even include the City of Bangor, where his business was located.

48. When Mr. Williams raised this issue with Defendants' representatives, he was told that his territory should have included Bangor.

49. Mr. Williams knew that Defendants were in negotiations with another potential franchisor in Maine, but he was led to believe that the other franchise would be located in Houlton, Maine.

50. Houlton, Maine, is approximately 120 miles north of Bangor.

51. Unbeknownst to Mr. Williams, Defendants were actually negotiating with Timothy Lattig ("Mr. Lattig") of Mid Maine Mechanical, LLC to establish an Aire Serv franchise in Lee, Maine.

52. Lee, Maine, is less than 60 miles north of Bangor.

53. Upon information and belief, Mr. Lattig was led to believe that Mr. Williams' franchise would be located in either the Waterville or Skowhegan area.

54. Upon information and belief, Mr. Lattig was also led to believe that Mr. Williams' franchise would be located more than 100 miles from his franchise.

55. To accommodate both franchises in such close proximity, Defendants granted Mr. Lattig all of the area north of Bangor and granted Mr. Williams all of the area south of Bangor.

56. Because of franchise minimum population requirements, neither franchise was awarded the City of Bangor, which remained non-exclusive territory to be serviced by either franchise.

57. When Mr. Williams approached Defendants about the territory issue, representatives told Mr. Williams they thought that his business was located in Brewer, Maine, rather than Bangor.

58. Mr. Williams paid Aire Serv $6,579.06 on November 10, 2015, as the initial payment of his franchise fee.

59. Mr. Williams is alleged to have signed a promissory note dated September 29, 2015, in the amount of $26,316.23, to evidence the remaining balance of his franchise fee to Aire Serv (the "Note").

60. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Lattig's franchise.

61. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Williams' territory.

62. Prior to signing the Franchise Agreement, Mr. Williams discussed with Defendants' representatives his option to take part in Aire Serv's Key Accounts program.

63. Mr. Williams opted to take part in the Key Accounts program, which was an important consideration in his decision to sign the Franchise Agreement and establish and Aire Serv franchise.

64. When Mr. Williams signed the Franchise Agreement, it stated that it would include the Key Accounts program, as provided for by Exhibit 15 to the Franchise Agreement.

65. The Franchise Agreement provides that it is not to be amended unless the changes are agreed upon and signed by all parties.

66. Defendants changed the Franchise Agreement after Mr. Williams signed it to remove the Key Accounts program.

67. Defendants never received Mr. Williams' written consent to remove the Key Accounts program.

68. Defendants failed to provide the fundamental marketing and managerial skills necessary to equip Mr. Williams to operate an Aire Serv franchise.

69. In fact, Mr. Williams never completed his second mandatory training session with Aire Serv.

70. By letter dated September 2, 2016, Mr. Williams, through counsel, made demand upon Aire Serv under the Unfair Trade Practices Act ("UTPA").

## COUNT I - DECLARATORY JUDGMENT
## FRAUDULENT MISREPRESENTATION

71. Mr. Williams incorporates the above allegations as if they were restated herein.

72. Defendants represented to Mr. Williams that his exclusive territory would contain a 30-mile radius around Bangor, including the City of Bangor.

73. Mr. Williams reasonably relied upon Defendants' representations in determining whether to enter into the Franchise Agreement, sign the incorporated Note, and pay the franchise fee.

74. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Williams' territory.

75. A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded based on the fraudulent misrepresentations made by Defendants' representatives as to Mr. Williams' exclusive territory.

76. Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based on fraudulent misrepresentation. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

### COUNT II - DECLARATORY JUDGMENT
### FRAUDULENT MISREPRESENTATION

77. Mr. Williams incorporates the above allegations as if they were restated herein.

78. Defendants represented to Mr. Williams that the nearest Aire Serv franchise would be located in the Houlton area.

79. Mr. Williams reasonably relied upon Defendants' representations in determining whether to enter into the Franchise Agreement and sign the incorporated Note and pay the franchise fee.

80. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Lattig's territory.

81. A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded based on the fraudulent misrepresentations made by Defendants' representatives as to Mr. Lattig's territory.

82. Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based on fraudulent misrepresentation. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

## COUNT III - DECLARATORY JUDGMENT
## UNILATERAL MISTAKE

83. Mr. Williams incorporates the above allegations as if they were restated herein.

84. Defendants had reason to know that Mr. Williams was operating under the misimpression that his exclusive territory contained a 30-mile radius around Bangor, including the City of Bangor.

85. Mr. Williams' misimpression as to his exclusive territory constitutes a unilateral mistake as to a material term of the Franchise Agreement.

86. A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded based on the unilateral mistake of Mr. Williams as to his exclusive territory.

87. Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based on unilateral mistake. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

## COUNT IV - DECLARATORY JUDGMENT
## MUTUAL MISTAKE

88. Mr. Williams incorporates the above allegations as if they were restated herein.

89. Defendants represented to Mr. Williams that his exclusive territory would contain a 30-mile radius around Bangor, including the City of Bangor.

90. To the extent that Defendants actually intended for Mr. Williams' exclusive territory to include the City if Bangor, the parties entered into the Franchise Agreement under an

actual and good faith mutual misunderstanding that Mr. Williams' exclusive territory would contain the City of Bangor.

91. In actuality, the Franchise Agreement did not include the City of Bangor as part of Mr. Williams' exclusive jurisdiction.

92. A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded based on the mutual mistake of the parties as to Mr. Williams' exclusive territory.

93. Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based on mutual mistake. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

### COUNT V - DECLARATORY JUDGMENT
### MUTUAL MISTAKE

94. Mr. Williams incorporates the above allegations as if they were restated herein.

95. To the extent that Defendants actually believed that Mr. Williams' business was located in Brewer, Maine, the parties entered into the Franchise Agreement under an actual and good faith mutual misunderstanding that Mr. Williams' exclusive territory would contain the city where his business is located.

96. In actuality, the Franchise Agreement did not include the city where his business is located as part of Mr. Williams' exclusive jurisdiction.

97. A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded based on the mutual mistake of the parties as to Mr. Williams' exclusive territory.

 

98.     Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based on mutual mistake. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

### COUNT VI - DECLARATORY JUDGMENT
### ADHESION CONTRACT

99.     Mr. Williams incorporates the above allegations as if they were restated herein.

100.    In negotiating the Franchise Agreement, Defendants exploited a vastly unequal bargaining position over Mr. Williams.

101.    The Franchise Agreement was a "take it or leave it" offer and demonstrates overreaching on the part of Defendants.

102.    A genuine justiciable controversy exists between the parties with regard to whether the Franchise Agreement should be rescinded as a contract of adhesion based on the unconscionability of Defendants' conduct.

103.    Pursuant to the Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, this Court has the power to declare the rights the parties with regard to the Franchise Agreement.

WHEREFORE, Mr. Williams prays that this Court enter a declaratory judgment that the Contract is rescinded based as a contract of adhesion. In addition, Mr. Williams seeks damages, costs and all other appropriate relief based on the foregoing allegations.

### COUNT VII – UNFAIR TRADE PRACTICES ACT
### VIOLATION OF FRANCHISE RULE

104.    Mr. Williams incorporates the above allegations as if they were restated herein.

105. FTC regulations require that a franchisor distribute a complete FDD to a prospective franchisee on a date that is no less than 14 days prior to the signing of any agreement.

106. In calculating the appropriate time period, the franchisor cannot count either the day the FDD is delivered or the day the agreement is signed.

107. Upon information and belief, Mr. Williams did not receive FDD until on or after September 30, 2015.

108. Mr. Williams signed the Franchise Agreement on October 12, 2015.

109. Aire Serv did not permit the required amount of time to pass between the delivery of the FDD and the signing of the Franchise Agreement.

110. A violation of the Rule is an unfair or deceptive act under the Unfair Trade Practices Act, 5 M.R.S. §§ 205-A-214 ("UTPA").

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Aire Serv and award damages, costs, attorney's fees, and all other appropriate relief based on the foregoing allegations.

### COUNT VIII - UNFAIR TRADE PRACTICES ACT
### VIOLATION OF FRANCHISE RULE

111. Mr. Williams incorporates the above allegations as if they were restated herein.

112. FTC regulations require that a franchisor distribute a complete FDD to a prospective franchisee on a date that is no less than 14 days prior to the signing of any agreement or payment of any money or consideration.

113. In calculating the appropriate time period, the franchisor cannot count either the day the FDD is delivered or the day the agreement is signed.

114. Upon information and belief, Mr. Williams did not receive FDD until on or after September 30, 2015.

115. Mr. Williams signed the Note on October 12, 2015.

116. Aire Serv did not permit the required amount of time to pass between the delivery of the FDD and the signing of the Note.

117. A violation of the Rule is an unfair or deceptive act under the UPTA.

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Aire Serv and award damages, costs, attorney's fees, and all other appropriate relief based on the foregoing allegations.

### COUNT IX - UNFAIR TRADE PRACTICES ACT
### VIOLATION OF FRANCHISE RULE

118. Mr. Williams incorporates the above allegations as if they were restated herein.

119. FTC regulations require that a franchisee must have all agreements which he must sign to acquire the franchise in his possession, with all blanks filled-in, no less than 7 calendar days before signing the agreements or paying any money.

120. If the franchisor makes a change to the agreement, then the 7 day holding period resets.

121. Mr. Williams signed the Franchise Agreement on October 12, 2015.

122. Sometime after Mr. Williams signed the Franchise Agreement, Aire Serv changed the Franchise Agreement to remove the Key Accounts program.

123. Aire Serv did not give Mr. Williams a 7 day holding period followed by a new opportunity to sign a revised Franchise Agreement.

124. A violation of the Rule is an unfair or deceptive act under the UPTA.

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Aire Serv and award damages, costs, attorney's fees, and all other appropriate relief based on the foregoing allegations.

### COUNT X – UNFAIR TRADE PRACTICES ACT

125. Mr. Williams incorporates the above allegations as if they were restated herein.

126. Aire Serv's actions constitute unfair or deceptive acts or practices in the conduct of trade or commerce.

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Aire Serv and award damages, costs, attorney's fees, and all other appropriate relief based on the foregoing allegations.

### COUNT XI - FRAUD/INTENTIONAL MISREPRESENTATION

127. Mr. Williams incorporates the above allegations as if they were restated herein.

128. Defendants' representatives told Mr. Williams that his exclusive territory would be roughly a 30-mile radius around Bangor, including the City of Bangor, and that the nearest competing franchise would be in the Houlton area.

129. Mr. Williams' exclusive territory was a material term of the Franchise Agreement.

130. The purpose Defendants' misrepresentations as to Mr. Williams' exclusive territory and competing franchises were to induce Mr. Williams to enter into the Franchise Agreement, sign the incorporated Note, and pay the franchise fee.

131. Mr. Williams reasonably relied upon Defendants' representations as to exclusive territory and competing franchises in determining whether to enter into the Franchise Agreement, sign the incorporated Note, and pay the franchise fee.



132. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Williams' exclusive territory and competing franchises.

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Defendants and award damages, costs and all other appropriate relief based on the foregoing allegations.

### COUNT XII - NEGLIGENT MISREPRESENTATION

133. Mr. Williams incorporates the above allegations as if they were restated herein.

134. Defendants' representatives supplied false information regarding Mr. Williams' exclusive territory and competing franchises.

135. This information was supplied to Mr. Williams for the guidance of his business transactions with Defendants.

136. Defendants' representatives failed to exercise reasonable care or competence in communicating the information to Mr. Williams.

137. Mr. Williams reasonably relied upon Defendants' representations as to exclusive territory and competing franchises in determining whether to enter into the Franchise Agreement, sign the incorporated Note, and pay the franchise fee.

138. Mr. Williams would not have signed the Franchise Agreement or the Note or paid the franchise fee had Defendants' representatives not made misrepresentations regarding the location of Mr. Williams' exclusive territory and competing franchises.

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Defendants and award damages, costs and all other appropriate relief based on the foregoing allegations.

## COUNT XIII - FRAUD

139. Mr. Williams incorporates the above allegations as if they were restated herein.

140. Defendants have produced a receipt purportedly signed by Mr. Williams and dated September 25, 2015.

141. The date on this receipt is incorrect at best, as Mr. Williams was traveling on September 25 and did not receive the FDD on that date.

142. Further, Mr. Williams has no recollection of signing the receipt.

143. Upon information and belief, the receipt is a false representation of a material fact regarding when Mr. Williams actually received the FDD.

144. Upon information and belief, Defendants produced the receipt with knowledge of its falsity of reckless disregard for whether it is true or false.

145. Upon information and belief, Defendants produced the receipt for the purpose of inducing the Federal Trade Commission to act in reliance upon it as conclusive proof of when Mr. Williams received the FDD.

146. Upon information and belief, the Federal Trade Commission justifiably relied upon the receipt as conclusive proof of when Mr. Williams received the receipt.

147. Mr. Williams has suffered a pecuniary loss as a result of the false representation

WHEREFORE, Mr. Williams prays that this Court enter a judgment in his favor of him and against Aire Serv and award damages, costs and all other appropriate relief based on the foregoing allegations.

 

Dated at Bangor, Maine, this 29¹ᵗ day of January 2018.

*/s/ Allison A. Economy*

**ALLISON A. ECONOMY, ESQ. ~ Bar #5336**
Rudman Winchell
Attorneys for Plaintiff
84 Harlow Street, P.O. Box 1401
Bangor, ME  04402-1401