# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| TROY WILLIAMS D/B/A TROY WILLIAMS HEATING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. 1:18-cv-099-NT |
| AIRE SERV, LLC AND THE DWYER GROUP, INC., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

Before the Court is the Defendants' motion to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to transfer the action to the United States District Court for the Western District of Texas, Waco Division, pursuant to 28 U.S.C. § 1404(a). (ECF No. 4.) For the reasons stated below, the motion to dismiss is **DENIED** and the motion to transfer venue is **GRANTED**.

### BACKGROUND

Plaintiff Troy Williams ("**Williams**" or the "**Plaintiff**") owns and operates Troy Williams Heating in Bangor, Maine. Compl. ¶¶ 5-6 (ECF No. 1-1). Defendant Aire Serv, LLC is a franchise organization that provides maintenance and repair for heating, cooling, and ventilation systems, and Defendant Dwyer Group is the holding

company of Aire Serv (collectively "**Aire Serv**" or the "**Defendants**"). Compl. ¶¶ 7-9.

Williams allegedly entered into a franchise agreement with Aire Serv to turn his existing business into an Aire Serv franchise (the "**Franchise Agreement**"). Compl. ¶ 45; Def.'s Ex. A (ECF No. 4-1). Williams claims that he entered the Franchise Agreement based upon Aire Serv's representations that his franchise would have a 30 mile exclusive zone in which no other Aire Serv franchise could operate, and that his zone would include Bangor, where his business was located. Compl. ¶¶ 12, 16. After signing the Franchise Agreement, Williams discovered that his zone included only the area south of Bangor, and that Aire Serv had entered into a franchise agreement with another business located north of Bangor. Compl. ¶¶ 46-47, 55, 57. Neither franchise had exclusive rights to Bangor. Compl. ¶ 56.[1]

The Franchise Agreement includes a forum selection clause that provides,

> **Consent to Jurisdiction**. FRANCHISOR AND FRANCHISEE SPECIFICALLY AGREE THAT ANY ACTION ON ANY DISPUTE SHALL BE FILED IN A FEDERAL OR STATE COURT LOCATED IN WACO, MCLENNAN COUNTY, TEXAS, AND FRANCHISEE HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS AND SPECIFICALLY WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF SUCH COURTS. However, Franchisor may, at its option, seek to enforce this Agreement and any arbitration orders and awards in the courts of the state or states in which Franchisee is domiciled or the Territory is located.
> FRANCHISOR AND FRANCHISEE ACKNOWLEDGE AND AGREE THAT THEIR AGREEMENT REGARDING

---

[1] Williams knew that Aire Serv was negotiating another franchise agreement with a company based in Maine, but he alleges that Aire Serv represented that this franchise would be located over 100 miles north of Bangor. Compl. ¶¶ 49-50. Williams claims that the individual whose business was located north of Bangor was also led to believe that Williams' franchise would be located further away from Bangor. Compl. ¶ 54.

**APPLICABLE STATE LAW AND FORUM PROVIDE EACH OF THE PARTIES WITH THE MUTUAL BENEFIT OF THE UNIFORM INTERPRETATION OF THIS AGREEMENT AND ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES. THE PARTIES FURTHER ACKNOWLEDGE THE RECEIPT AND SUFFICIENCY OF MUTUAL CONSIDERATION FOR SUCH BENEFIT.**

Defs.' Ex. A 33-34 (emphasis in original).

The Plaintiff initially sued Aire Serv in Penobscot County Superior Court. Compl.[2] The Defendants removed the action to this Court and now move to dismiss the case for failure to state a claim because of the Plaintiff's alleged failure to comply with the forum selection clause, or alternatively, to transfer venue to the United States District Court for the Western District of Texas, Waco Division. Notice of Removal (ECF No. 1); Defs.' Mot.

**LEGAL STANDARD**

Venue "refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general." 28 U.S.C. § 1390. Section 1391(b) provides that:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought

---

[2] The Complaint alleges 13 counts: counts I-II for fraudulent misrepresentation, count III for unilateral mistake, counts IV-V for mutual mistake, count VI for adhesion contract, counts VII-X for unfair trade practices, in violation of 5 M.R.S. §§ 205-A—214, count XI for intentional misrepresentation, count XII for negligent misrepresentation, and count XIII for fraud.

as provided in this section, any judicial district in which any defendant
is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Where a plaintiff complies with § 1391(b), venue is considered "proper."[3] While a plaintiff gets to choose where among the § 1391(b) options to file a complaint, a district court may, upon motion or consent of all parties, transfer the case to another district or division. 29 U.S.C. § 1404(a). In deciding whether to transfer a case, courts "must evaluate both the convenience of the parties and various public-interest considerations" as part of the § 1404(a) analysis. *Atl. Marine*, 571 U.S. at 62. Courts weigh these factors and determine whether, on the whole, "transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62-63 (quoting 28 U.S.C. § 1404(a)).

Parties may agree to limit appropriate venues for potential future lawsuits through a forum selection clause in a contract. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 53 (2013). When a plaintiff files suit in a "proper" venue for purposes of § 1391(b) but in a venue other than where the parties agreed to litigate in a forum selection clause, a defendant may seek to enforce the forum selection clause by filing a motion to transfer venue under 28 U.S.C. § 1404(a). *Id.* at 59.[4] " '[A] valid forum-selection clause [should be] given controlling

---

[3] Where a plaintiff fails to comply with § 1391, venue is considered improper, and a district court is directed to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A defendant may file a motion to dismiss under Rule 12(b)(3) for improper venue or file a motion for transfer pursuant to § 1406(a).

[4] The Supreme Court has reserved judgment on whether a Rule 12(b)(6) motion to dismiss for failure to state a claim is also an appropriate procedural vehicle. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 61 (2013). Post-*Atlantic Marine*, the First Circuit has continued to allow litigants to use Rule 12(b)(6) as a vehicle to enforce forum selection clauses. *See Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 291-92 (1st Cir. 2015); *Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 n.3 (1st Cir. 2014).

4

weight in all but the most exceptional cases.' " *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (second alteration in original). Where there is a valid forum selection clause, courts alter their transfer analysis in three ways. First, the plaintiff's choice of forum is entitled to no weight, and the plaintiff bears the burden of establishing that transfer to the bargained-for forum is improper. *Id.* at 63-64. Second, the court may consider public-interest concerns, but not the parties' private concerns (meaning, their convenience). *Id.* at 64. Third, the transfer "will not carry with it the original venue's choice-of-law rules." *Id.* The result of this analytical framework is that "[i]n all but the most unusual cases," the parties will be held to their bargained-for forum selection clause. *Id.* at 66.

## DISCUSSION

The Plaintiff makes a three-pronged argument that venue is appropriate in the District of Maine. First, the Plaintiff contends that because the Franchise Agreement is void, its forum selection clause does not control. Second, the Plaintiff argues that even if the Franchise Agreement is valid, the forum selection clause is unenforceable under the factors set forth in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

---

The Defendants argue that dismissal without prejudice under Rule 12(b)(6) is most appropriate, because the Plaintiff would retain the ability to sue in either state or federal court in Texas. But the Plaintiff expresses no interest in a Texas state venue, arguing that the Defendants' "request to dismiss this case is not warranted because a motion to transfer under Section 1404(a) would be the appropriate mechanism where there exists a valid forum selection clause." *See* Pl.'s Opp'n 2 (ECF No. 10). Given the Plaintiff's position, and *Atlantic Marine*'s clear sanctioning of the § 1404(a) route, I proceed under § 1404(a). *See, e.g.*, *Montoya v. CRST Expedited, Inc.*, 285 F. Supp. 3d 493, 497 (D. Mass. 2018) (granting motion to transfer where court was also presented with a motion to dismiss).

(1972). Finally, Plaintiff contends that transfer is not warranted under the § 1404(a) factors.

I.  **Validity of the Forum Selection Clause in a Contract Alleged to be Void**

The Plaintiff argues that the forum selection clause is invalid because the Franchise Agreement as a whole is void. Pl.'s Opp'n 5-8. Specifically, the Plaintiff contends that the Franchise Agreement was either the result of the parties' mutual mistake as to Williams' exclusive territory, or the result of fraud, namely Aire Serv's intentional misstatements about Williams' exclusive zone. Pl.'s Opp'n 6-8. The Defendants dispute the Plaintiff's factual allegations and note that the Plaintiff's arguments go to the issue of whether the *entire* Franchise Agreement is void, as opposed to whether the forum selection clause specifically was fraudulently induced.

The Defendants are correct that a forum selection clause may be enforceable even where the underlying contract is void. *See Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 148 (1st Cir. 2017).[5] The Plaintiff's argument, that the court should consider whether there was fraud in the inducement of the entire Franchise Agreement, must fail, because

> "[t]he logical conclusion of the argument would be that the federal courts . . . would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if [this] court [in Maine] determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be

---

[5]  The First Circuit has signaled that a forum selection clause may not be enforceable where a court determines that a party did not sign the contract, the party lacked authority to commit to a contract, or where a party lacked the mental capacity to assent. *See Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 147-48 (1st Cir. 2017). The Plaintiff does not allege that any of these possible defenses to contract formation are present in the instant case.

6

sent to [Texas]—for what? A determination as to whether the contracts are void?"

*Id.* at 147 (quoting *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006)).

## II. The Enforceability of the Forum Selection Clause under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)

The Plaintiff next argues that even if the Franchise Agreement is a valid contract, the forum selection clause is unenforceable under the factors set forth in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). A party that advocates setting aside a forum selection clause under *Bremen* has the burden to make a "strong showing" that:

> (1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) its enforcement would render the proceedings gravely difficult and inconvenient to the point of practical impossibility; or (4) enforcement contravenes "a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."

*Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 292 (1st Cir. 2015) (quoting *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 23 (1st Cir. 2011)).[6] The Plaintiff seeks to avoid enforcement of the forum selection clause on each of the four *Bremen* factors.

---

[6] The First Circuit has applied the *Bremen* factors to determine the enforceability of a forum selection clause post-*Atlantic Marine*. *See Carter's*, 790 F.3d at 292 n.3. In *Carter's*, the First Circuit did not resolve the moving party's argument that *Atlantic Marine* demands that a "heightened standard" apply to efforts to avoid a forum selection clause, because the court enforced the clause even under *Bremen*. *Id.* The Defendants accept that the *Bremen* factors, generally, guide the analysis. *See* Defs.' Reply to Pl.'s Opp'n 2 (Defs.' Reply) (ECF No. 11). I apply the *Bremen* factors and, given my finding that the Plaintiff has not satisfied his burden of showing hardship, I need not resolve the Defendants' claim that *Atlantic Marine* forecloses the Plaintiff's argument about the private cost of litigating in Texas. *See infra.*

7

The Plaintiff first argues that the forum selection clause was the product of fraud or overreaching, namely Aire Serv's intentional misrepresentation about the exclusive zone. Pl.'s Opp'n 12. The Plaintiff suggests that this court follow *Hoffman v. Minuteman Press International, Inc.*, a case "involv[ing] allegations that small, unsophisticated business people were fraudulently induced to enter franchise agreements which they never would have entered but for the fraud." 747 F. Supp. 552, 559 (W.D. Mo. 1990). The *Hoffman* court, in the context of a domestic franchisor-franchisee dispute, declined to "enforce forum clauses in legitimate fraudulent inducement cases." *Id.* at 558.

The Defendants accurately note that the Plaintiff's argument seizes on one district court decision, issued over two decades before *Atlantic Marine*, while failing to distinguish relevant Supreme Court and First Circuit precedent. For a district court considering whether to enforce a forum selection clause, "[t]he correct approach [is] to enforce the forum clause specifically unless [a party] could clearly show . . . that *the clause* was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15 (emphasis added). The *Bremen* fraud overreach exception "is triggered not by claims that the contract was induced by fraud but only by a focused showing . . . that 'the inclusion of that clause in the contract was the product of fraud or coercion.' " *Huffington*, 637 F.3d at 24 (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)).

The Plaintiff's distinctions, that *Bremen* involved two sophisticated international parties appearing before a district court sitting in admiralty rather

8

than two domestic companies and that *Scherk* involved an arbitration clause, are factually correct but not legally significant in light of more recent decisions. In *Atlantic Marine*, for example, the Supreme Court gave effect to a forum selection clause between entirely domestic parties and arbitration was not an issue. *See* 571 U.S. at 52-53. Likewise, the First Circuit has enforced a forum selection clause between domestic parties where the plaintiff claimed that he was induced to enter a contract based upon a defendant's intentional misrepresentation of risk. *See Huffington*, 637 F.3d at 21, 24. The Plaintiff has presented no evidence that the forum selection clause itself, as opposed to the entire contract, was fraudulently induced. *See id.* at 24.

The Plaintiff also leans on *Hoffman* to support his claim that enforcement of the forum selection clause would be unreasonable and unjust under the second *Bremen* factor. Williams claims that Aire Serv officials pressured him to sign the Franchise Agreement before he had reviewed it, and that the company did not follow the mandatory 14 day holding-off period provided for by the Federal Trade Commission's Franchise Rule. *See* Pl.'s Opp'n 13; Compl. ¶¶ 21-25, 28-36. The Plaintiff characterizes the contract as a "take it or leave it" offer, put to him by a party with unequal bargaining power. Pl.'s Opp'n 14. Enforcement of the clause under these circumstances would be "grossly unfair," according to the Plaintiff. Pl.'s Opp'n 14 (quoting *Hoffman*, 747 F. Supp. at 559 (emphasis omitted)).

The Supreme Court has rejected challenges to forum selection clauses where one party had unequal bargaining power and did not negotiate the terms of the

9

contract. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). In *Shute*, where a cruise ship passenger sought to recover for injuries sustained after falling aboard the ship, the Court examined the "fundamental fairness" of a forum selection clause printed on the back of a ticket. Noting that the plaintiffs had "notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity," the Court concluded that the forum selection clause was neither unreasonable nor unjust even though it was "not the subject of bargaining." *Id.* at 593, 595. Here, Williams had the option of not pursuing the franchise opportunity if he felt that Aire Serv had behaved inappropriately. Even if the Plaintiff only had 12 days rather than the required 14 to review the Franchise Agreement, this deficiency does not render enforcement of the forum selection clause fundamentally unfair. As in *Shute*, the Plaintiff had notice of the forum selection clause and had the option not to enter the contract.[7]

The Plaintiff next claims that enforcing the forum selection clause would be so expensive as to deprive him of his day in court. Pl.'s Opp'n 14-15. The added travel expense to litigate in Texas, combined with Williams's lost revenue from being away from his small-business, are the crux of the Plaintiff's argument. The Plaintiff has not met his burden "to provide a *factual* record establishing" that the financial difficulties of litigating in Texas would effectively deprive him of his day in court. *See*

---

[7] To the extent that Williams may not have read the forum selection clause before signing the contract, he was still on notice of its terms. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *American Fidelity Co. v. Mahoney*, 174 A.2d 446, 450 (Me. 1961) (citing *J.R. Watkins Med. Co. v. Stahl*, 103 A. 70, 71 (Me. 1918)).

*In re Mercurio*, 402 F.3d 62, 66-67 (1st Cir. 2005); *see also Bremen*, 407 U.S. at 19. A conclusory statement that enforcing the forum selection clause would make "bankruptcy [ ] not just an option, but almost certain," is insufficient. Pl.'s Opp'n 15.[8] *See In re Mercurio*, 402 F.3d at 66-67 ("The district judge's bare conclusion that [a party] would be 'deprived of his day in court' is unsupported by any evidence in the record.").

The Plaintiff further argues that under *Bremen*'s fourth factor enforcement of the forum selection clause would be contrary to public policy. The Plaintiff contends that the "Maine Legislature has articulated a strong public policy aimed at protecting the public from fraud and deception" and there is no guarantee that Texas would apply Maine law. Pl.'s Opp'n 15. The Plaintiff has not demonstrated that he is entitled to the application of Maine law in spite of the Franchise Agreement's choice of law provision that identifies Texas law as the governing law. *See* Defs.' Ex. A 33. Further, the Plaintiff has not demonstrated that Texas lacks policies aimed at protecting the public from fraud and deception.

---

[8] Given my finding that the Plaintiff has not established a factual record to support his financial hardship, I need not decide whether *Atlantic Marine* forecloses a party from arguing that its private costs are a determinative factor for non-enforcement of a forum selection clause under *Bremen*. "Lower courts have taken various approaches when applying *Bremen* and *Atlantic Marine*." *Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 730 (D. Ariz. 2015); *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 884 (11th Cir. 2018) (analyzing private interests only "to the extent that we may consider [plaintiff's financial difficulties] after *Atlantic Marine*."). The Supreme Court in *Atlantic Marine* made clear that private interests are not to be considered in analyzing a motion to transfer under § 1404, but the Court's "analysis presuppose[d] a contractually valid forum-selection clause." 571 U.S. at 62 n.5. The First Circuit has suggested that a plaintiff's financial means to litigate remains a valid factor under *Bremen*. *See Carter's*, 790 F.3d at 294 & n.6 ("This is not to discourage small businesses from raising Carter's argument [that it did not have the resources to litigate in the selected forum], but the difficulty for a [multi-million dollar] American company of litigating in Oregon is not the same as that of an individual litigating in Switzerland.").

11

The Plaintiff has failed to make the strong showing required to invalidate the forum selection clause on any of the four *Bremen* factors.

## III. Section 1404(a) Analysis

Finally, the Plaintiff argues that even if the forum selection clause is contractually valid and enforceable, the public interest overwhelmingly disfavors a transfer. *See Atl. Marine*, 571 U.S. at 67. Public interest factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Court in *Atlantic Marine* made clear that the public interest is served "[i]n all but the most unusual cases" by holding parties to the terms of their contracts, including their forum selection clauses. *Id.* at 66.

Citing caseload statistics, the Plaintiff identifies court congestion as a public interest factor that "weighs heavily" in retaining this case in Maine. Pl.'s Opp'n 16. Though the Western District of Texas has more pending cases per judgeship, the District handles its cases in a timely fashion. Further, because the Franchise Agreement calls for Texas law to apply to any dispute, transferring the case will allow it to be decided "in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. Presented with no additional factors or evidence that weigh in the Plaintiff's favor, I find that the public interest does not overwhelmingly disfavor transfer.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion to dismiss and **GRANTS** the Defendants' motion to transfer venue. The Court **ORDERS** that this case be transferred to the United States District Court for the Western District of Texas, Waco Division.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 12th day of October, 2018.